William F. Knowles, ISB #9831
**COZEN O'CONNOR**
999 Third Avenue, Suite 1900
Seattle, Washington 98104
Telephone: 206.340.1000
Facsimile: 206.621.8783
E-mail: wknowles@cozen.com

Michael W. Melendez
(*Pro Hac Vice to be Submitted*)
Teri Mae Rutledge
(*Pro Hac Vice to be Submitted*)
**COZEN O'CONNOR**
101 Montgomery St, Suite 1400
San Francisco, CA 94104
Telephone: 415.644.0914
Facsimile: 415.644.0978
E-mail: mmelendez@cozen.com
E-mail: trutledge@cozen.com

*Attorneys for Plaintiff Homeland Insurance Company of New York Corporation*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| HOMELAND INSURANCE COMPANY OF NEW YORK, a New York corporation,<br><br>Plaintiff,<br><br>v.<br><br>CENTAURUS FINANCIAL, INC., a California corporation,<br><br>Defendant. | Case No.: 2:21-cv-457<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

COMPLAINT FOR DECLARATORY RELIEF - 1

## NATURE OF THE ACTION

1.     Plaintiff Homeland Insurance Company of New York ("Homeland") seeks the Court's declaration that no coverage exists under the professional liability insurance contracts it issued in Couer d'Alene, Idaho, to Centaurus Financial, Inc. ("Centaurus") for several claims implicating the common wrongful practices of longtime Centaurus representative, Bryon Martinsen.  Under each Homeland policy, a claim must be made against the insured during the policy period for coverage to arise.  Under the Homeland policies, all claims resulting from the same or related wrongful acts are deemed to have occurred on the date the first claim was made, or the date of notice of the first related wrongful act.  The claims against Mr. Martinsen are based on the same or related alleged wrongful acts, including his practice of selling publicly registered non-exchange traded real estate investment trusts ("non-traded REITs").  Because the first claim against Mr. Martinsen for his related wrongful acts pre-dates the inception of any of the Homeland policies, all related claims are deemed to have occurred prior to the inception of any of the Homeland policies.  As such,  no claim was made during the policy period of any Homeland policy, the claims against Centaurus based on Mr. Martinsen's conduct are not covered by any Homeland policy.

## PARTIES

2.     Homeland is and at all times herein mentioned was a corporation organized and existing under the laws of New York with its principal place of business in Minnesota.

3.     Centaurus is and at all times herein mentioned was a corporation organized and existing under the laws of California with a principal place of business in California.

4. Centaurus has an office in Idaho and Homeland has issued six policies of insurance to Centaurus at its office in Idaho. On information and belief, Centaurus requested that the policies be issued in Idaho.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. section 1332. There is complete diversity of citizenship at the time this action is commenced. The matter in controversy exceeds the sum of $75,000.

6. Venue is proper in this Court under 28 U.S.C. section 1391 because the Court has personal jurisdiction over Centaurus and because a substantial part of the events giving rise to the claims asserted herein—specifically the issuance of Homeland's insurance contracts to Centaurus—occurred in this district. The obligations under these insurance contracts are the sole issue presented in this action.

## GENERAL ALLEGATIONS

**The Martinsen Claims**

7. This action concerns coverage for five claims against Centaurus for the investment practices of its representative Bryon Martinsen (collectively, "the Martinsen claims").

8. Each of the five Martinsen claims is an arbitration proceeding filed before the Financial Industry Regulatory Authority ("FINRA"). Each FINRA Statement of Claim alleges that Martinsen, ignoring the needs of his clients and their risk tolerance, advised investment in risky investment products. Every claim involves non-traded REITs.

9. Non-traded REITs are generally illiquid for long periods of time, and early redemption of shares is limited and may be expensive. Additionally, very limited secondary

markets are available to purchase non-traded REITs.  The purchase price on a secondary market may be below the purchase or current price of the non-traded REIT.  Non-traded REITs are subject to high fees, including selling compensation to the producer.  Non-traded REITs pay periodic distributions, but such distributions are not guaranteed and may exceed the operating cash flow of the REIT.  The distributions may be funded by investor capital or borrowed funds, not the income of the real estate in the REIT.

10. On information and belief, Mr. Martinsen has been a registered representative with Centaurus since 1999.  On information and belief, beginning at least as early as 2014, Mr. Martinsen's improper, risky investment advice raised concern among his clients and resulted in the filing of a 2014 FINRA complaint respecting the sale of non-traded REITs, leasing equipment funds and private placements.

11. On July 13, 2016, Susan Locks, Brian Cook, and Gibril Wilson filed a Statement of Claim against Centaurus.  Ms. Locks' claim implicates Martinsen's services.  She alleges that he advised her to invest in certain non-traded REITs, indicating that these investments were safe and stable, although he knew the funds were not stable or suitable for her investment needs or risk tolerance.  The Locks Statement of Claim is attached hereto as **Exhibit 1**.

12. On May 29, 2018, Ester Divirgilio filed a Statement of Claim against Centaurus concerning Martinsen's services.  Ms. Divirgilio, a retiree and a widow, alleges that she required stability and income from her investments.  She alleges that she was not sophisticated in investing.  Ms. Divirgilio alleges that Martinsen invested much of her portfolio in inappropriate non-traded REITs, including one Ponzi-scheme-like non-traded REIT, United

Development Fund IV, as well as other private placements. The Divirgilio Statement of Claim is attached hereto as **Exhibit 2.**

13.     On April 16, 2019, Angela Rizzo filed a Statement of Claim against Centaurus and Martinsen. Ms. Rizzo is alleged to be a 65-year old retiree, unsophisticated in financial matters, with goals of preserving capital and long-term growth. Mr. Martinsen invested her funds in non-traded REITs, which are, she alleged, for investors with a tolerance for high risk. Ms. Rizzo alleged that her investments paid Mr. Martinsen's commission at rates as high as 7 percent. Ms. Rizzo alleged that Mr. Martinsen did not advise that REITs can fail, and one with which she was invested did, causing a loss of all her principal investment. Ms. Rizzo specifically invoked the 2014 complaint against Martinsen in detailing her claims against him. The Rizzo Statement of Claim is attached hereto as **Exhibit 3.**

14.     On April 7, 2020, Chi Pui Cheung and Chien Cheung filed a Statement of Claim with FINRA against Centaurus concerning Martinsen. The claimants allege losses from investments in non-traded REITs, as well as direct participation programs ("DPPs"), Tenants in Common Investments, and equity-indexed and variable annuities. The claimants are alleged to be over 75 years old and unsophisticated in finance and investment products. The Cheungs alleged that several complaints against Martinsen had been made over the course of his career. The Cheung Statement of Claim is attached hereto as **Exhibit 4.**

15.     On October 7, 2020, Hua Chin Chen, Amelie Tseng, and Leslie Tseng filed a FINRA Statement of Claim against Centaurus again concerning Martinsen. The investment products sold to the claimants were non-traded REITs, DPPs, and variable annuities. None of the claimants are alleged to be sophisticated in financial matters. Hua Chin Chen is alleged to be 91 years old and allegedly needed to live off his investments. Mr. Martinsen allegedly

recommended the investments because they brought in large commissions for Mr. Martinsen and Centaurus. The Chen Statement of Claim is attached hereto as **Exhibit 5.**

16. Homeland has reserved its rights under its policies issued to Centaurus respecting the Martinsen claims.

17. Homeland requested that Centaurus provide information regarding any previous tender of the claims to another carrier, as well as information respecting related claims. Centaurus has not done so.

**The Homeland Insurance Contracts**

18. Homeland and Centaurus entered into six insurance contracts for Life Agent Broker-Dealer Professional Liability coverage under numbers FIN000014-0000, effective December 31, 2015 to December 31, 2016 ("the 2015-16 policy"); FIN000014-0001, effective December 31, 2016 to December 31, 2017 ("the 2016-17 policy"); FIN000014-0002, effective December 31, 2017 to December 31, 2018 ("the 2017-18 policy"); FIN000014-0003, effective December 31, 2018 to December 31, 2019 ("the 2018-19 policy"); FIN000014-0004, effective December 31, 2019 to December 31, 2020 ("the 2019-20 policy"); and FIN000014-0005, effective December 31, 2020 to December 31, 2021 ("the 2020-21 policy") (collectively "the policies" or "the Homeland policies"). The policies are attached hereto as **Exhibits 6-11**.

19. The policies disclaim any duty to defend on the part of Homeland.

20. The policies indicate that Centaurus must exhaust the policy aggregate retention and the each-claim retention for covered Loss before Homeland can have any obligation to pay a covered, non-excluded Loss. Further, the polices are each subject to a per-claim limit. The yearly policy aggregate retentions, each claim retentions, and each-claim limits are:

COMPLAINT FOR DECLARATORY RELIEF - 6

LEGAL\55228131\1

| Policy | Policy Aggregate Retention | Per-Claim Retention | Per-Claim Limit |
|---|---|---|---|
| 2015-16 | $3,000,000 | $50,000 | $2,000,000 |
| 2016-17 | $3,000,000 | $50,000 | $2,000,000 |
| 2017-18 | $2,000,000 | $50,000 | $2,000,000 |
| 2018-19 | $1,500,000 | $50,000 | $2,000,000 |
| 2019-20 | $1,500,000 | $50,000 | $2,000,000 |
| 2020-21 | $1,500,000 | $50,000 | $2,000,000 |

21.     The policies provide, in Section I., "Insuring Agreements":

**A.     Professional Liability**

Subject to Paragraph C. How This Coverage Applies below, Insurer shall pay on behalf of the **Insureds** that **Loss**, in excess of the Policy Aggregate Retention and Scheduled Retentions set forth in the Declarations, which the **Insureds** become legally obligated to pay as the result of a **Claim** for a **Wrongful Act** solely in performing or failing to perform **Professional Services**.

\* \* \*

**C. How This Coverage Applies**

Coverage for a Claim for a Wrongful Act under paragraphs A. or B. above applies only if:

\* \* \*

**2.** The **Claim** is first made against any **Insured** during the **Policy Period** or any **Extended Reporting Period**, if applicable, and reported to the Insurer in accordance with Section VII – NOTICE AND REPORTING OF CLAIMS AND CIRCUMSTANCES; and

**3.** Before the date the **Insured** initially enrolled under this Policy or any other policy issued by the Insurer for which this Policy is a renewal or replacement, whichever is earlier, no **Insured** knew of, or could have reasonably foreseen that, any **Wrongful Act** might result in a **Claim**; and

**4.** No **Insured** gave notice of such **Wrongful Act** or any **Related Wrongful Acts** during the policy period of any policy that preceded this Policy.

COMPLAINT FOR DECLARATORY RELIEF - 7

LEGAL\55228131\1

22. The policies define "**Related Wrongful Acts**" to mean "any **Wrongful Acts** which are logically or causally connected by reason of any common fact, circumstance, situation, transaction or event."

23. The policies provide, in Section VI, "Limits of Liability, Retention and Allocation":

> **H. Related Wrongful Acts**
>
> All **Related Wrongful Acts** will be deemed to have occurred on the date of the first such **Wrongful Act**.
>
> Two or more **Claims** involving the same **Wrongful Act** or **Related Wrongful Acts** will be treated as a single **Claim** made on the earlier of:
>
> **1.** The date on which the earliest such **Claim** was first made; or
>
> **2.** The date on which notice of the **Wrongful Act** or first **Wrongful Act** in the **Related Wrongful Acts** was given;
> regardless of whether that date is during this **Policy Period** or during a prior policy of this Insurer or any other insurer.

24. Because the Martinsen claims involve Related Wrongful Acts for which a Claim was first made before the earliest Homeland policy, none of the policies cover the Martinsen claims. Further, because, on information and belief, Centaurus notified one or more insurers who had issued professional liability policies effective before the Homeland policies of the Related Wrongful Acts underlying the Martinsen claims, there is no coverage under the Homeland policies.

25. Further, the policies broadly exclude coverage for any **Claim** or **Loss** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any arbitration proceeding which was pending as of or existed prior to the inception date of the policy as well as the same or substantially similar fact, circumstance, situation, transaction, event, act, error, or omission underlying or alleged in such arbitration proceeding.

26. The policies broadly exclude coverage for any **Claim** or **Loss** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving an actual or alleged profit, remuneration, or pecuniary advantage gained by any Insured, as determined by a final adjudication in the underlying action.

27. The policies broadly exclude coverage for any **Claim** or **Loss** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving actual or alleged liability of others assumed by an Insured under any contract or agreement, except to the extent the liability would have attached absent the contract.

28. The policies broadly exclude coverage for any **Claim** or **Loss** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving actual or alleged promises or guarantees as to the market value of any investment or insurance product or future premium payments.

29. The policies broadly exclude coverage for any **Claim** or **Loss** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged dishonest, fraudulent, criminal, malicious, purposeful or intentional act, error or omission, or any actual or alleged willful violation of any statute or law as determined by a final adjudication in the underlying action or in a separate action or proceeding.

30. The policies broadly exclude coverage for any **Claim** or **Loss** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving insolvency or inability to pay of a natural person, entity, or a limited partnership's default on its obligations in which the **Insured** has placed business or placed or recommended placement of the funds of a **Client.**

31. The policies broadly exclude coverage for any **Claim** or **Loss** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any use of or investment in any Limited Partnership, Real Estate Investment Trusts (REIT's), any investment vehicle in which the underlying property is in foreclosure, issuer callable certificates of deposit, equipment sale-lease-buy-back transactions of any kind and/or any security that is not registered with the Securities and Exchange Commission, with certain exceptions for products complying with Blue Sky laws, Private Placements sold only to Accredited Investors, and are sold to investors who meet state minimum suitability standards.

32. The policies broadly exclude coverage for any **Claim** or **Loss** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any dispute over fees, commissions or charges, including without limitation the structure of fees or excessive fees.

33. The policies broadly exclude coverage for any **Claim** or **Loss** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any security issued by an entity unable to meet the minimum capitalization and other standards for listing and maintenance on the NASDAQ SmallCap Market.

34. The policies define "**Loss**" to mean monetary settlements or judgments and Claim Expenses the Insured is legally obligated to pay for a covered Claim. But Loss does not include the return of commissions, fees or charges for services rendered by the Insured, which the Martinsen claims allege. The policy also excludes from loss punitive damages, civil fines and penalties under certain circumstances, amounts uninsurable under the law under which the policies are to be construed, among other exceptions. Such relief is not Loss within Insuring Agreement A.

35. Homeland contends that one or more of the above provisions bar coverage under the policies.

36. Centaurus contends that the Martinsen claims are not based on Related Wrongful Acts and therefore not deemed a single claim. Centaurus contends that the Martinsen claims are covered by the Homeland policies. Centaurus has demanded amounts incurred in certain policy years in which it asserts it has paid applicable retentions.

## COUNT I – DECLARATORY RELIEF (No Coverage Under the Policies)

37. Homeland incorporates by reference and re-alleges the preceding allegations as though fully set forth herein.

38. Homeland and Centaurus are parties to the policies.

39. Homeland contends that Centaurus is not entitled to coverage for the Martinsen claims under the Homeland policies.

40. Centaurus contends that it currently is entitled to coverage for the Martinsen claims.

41. An actual and justiciable controversy exists between Homeland on one hand and Centaurus on the other, with respect to the meaning of the policies and the parties' respective rights, duties, and obligations.

42. Homeland seeks, pursuant to 28 U.S.C. section 2201 and Federal Rule of Civil Procedure 57, a judicial declaration of parties' respective rights, duties, and obligations under the policies.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendant as follows:

A. Declaring that Homeland Insurance Company of New York has no obligation to Centaurus Financial Inc. and/or Mr. Martinsen for the Martinsen claims under the Homeland policies;

B. For costs of suit; and

C. Awarding such other and further relief as the Court finds just and proper.

DATED this 23rd day of November, 2021.

COZEN O'CONNOR

By: */s/ William F. Knowles*
William F. Knowles, 9831
999 Third Avenue, Suite 1900
Seattle, Washington 98104
Telephone: 206.340.1000
Toll Free Phone: 800.423.1950
Facsimile: 206.621.8783
E-mail:   wknowles@cozen.com

Michael W. Melendez, *Pro Hac Vice to be submitted*
Teri Mae Rutledge, *Pro Hac Vice to be submitted*
101 Montgomery St, Suite 1400
San Francisco, CA 94104
Telephone: 415.644.0914
Facsimile: 415.644.0978
E-mail:   mmelendez@cozen.com
         trutledge@cozen.com

*Attorneys for Homeland Insurance Company of New York Corporation*